### United States District Court
### District of Massachusetts

```
_____         )
                                    )
Class, Inc.,                        )
                                    )
          Plaintiff,                )
                                    )
          v.                        )      Civil Action No.
                                    )      19-11085-NMG
Service Employees International      )
Union, Local 509,                   )
                                    )
          Defendant.                )
_____         )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This case arises out of a disputed arbitration between Class, Inc. ("Class", "the employer" or "plaintiff") and the Service Employees International Union, Local 509 ("SEIU", "the Union" or "defendant") after Class discharged one of its employees (a member of the Union) for alleged misconduct.  Class asserts that the arbitrator exceeded the scope of her authority under the Collective Bargaining Agreement ("the CBA") and applicable law when she reinstated the employee and ordered that he receive backpay.  The plaintiff now seeks an order vacating the arbitration award which the Union urges the court to confirm.

Before the Court are motions of both plaintiff and defendant for judgment on the pleadings.  For the reasons that

-1-

follow, plaintiff's motion for judgment on the pleadings will be denied and defendant's motion for judgment on the pleadings will be allowed.

## I.  Background

### A. The CBA

Plaintiff is a Massachusetts corporation which provides services to adults with special needs.  Defendant is the authorized collective bargaining representative of certain employees of Class.  Class and the Union entered into a CBA which was effective from January, 2015, through June, 2017.

Article VII of the CBA, entitled "Discipline and Discharge", provides that an employee who has completed his probationary period may not be disciplined except for just cause.  Under Article IV, however, the employer expressly retains the exclusive right

> except as specifically limited by an express provision of this Agreement... [to] suspend, discharge or discipline employees for just cause...

Article VIII of the CBA, entitled "Grievance and Arbitration", sets forth the grievance procedure that may be used to resolve disputes between the employer and its employees and provides for binding arbitration if a grievance remains unresolved.  The parties agreed that the arbitrator's authority

> shall be confined exclusively to the interpretation and/or application of the specific provisions of this agreement. The

-2-

arbitrator shall have no authority to add to, detract from, alter, amend, or modify a provision of this agreement...

The other relevant provision of the CBA, Article XXXIII entitled "Investigations", describes the process for investigating employee misconduct:

Employees... who are alleged to have mistreated or abused an individual will be reported to the DPPC [Disabled Persons Protection Commission, a state agency]. Any employee in this situation will be placed on an unpaid leave of absence....An internal investigation into the situation will be conducted after which the employer will determine whether or not disciplinary action is warranted.  Nothing in this article shall limit the Agency's right to discipline employees for just cause at any time regardless of the status of any governmental investigation.

**B. The Discharge**

Orlando Batista-Villa ("Mr. Batista-Villa" or "the grievant") was employed by Class from mid-2015 until his termination on September 15, 2017.  He was initially hired as a driver but applied for and was given the position of "Day Hab Specialist", whereby he provided care and transportation for adults with disabilities.  On May 5, 2017, the grievant was suspended without pay pending an investigation into two allegations of patient abuse: 1) On May 3, 2017, the Grievant allegedly slapped a blind, non-verbal individual ("Bobby") with a history of self-injurious behavior ("the Bobby Incident") and 2) On May 4, 2017, the grievant allegedly left a wheelchair-

bound individual alone in a bathroom for an extended period of time ("the Michelle Incident").

These incidents were reported to the Disabled Persons Protection Commission ("DPPC"), and Class suspended Batista-Villa without pay.  On September 13, 2017 the Massachusetts Department of Developmental Services ("DDS" or "the Agency"), a Massachusetts Agency which provides a variety of services to people with disabilities, issued a decision letter which substantiated a finding of mistreatment resulting from the Bobby Incident but did not sustain the allegation regarding the Michelle Incident.

Although the Arbitrator's award refers solely to the DPPC's inquiry, it appears the DDS conducted the investigation.  The DPPC and DDS are both state agencies responsible for conducting investigations into allegations of abuse.  When an allegation is referred to the DPPC, it either investigates itself or refers the allegation to an appropriate entity.  In this case, the DPPC referred the investigation to the DDS.  Two days after the DDS decision, Class terminated Mr. Batista-Villa.

**C. The Grievance and Arbitration**

The Union filed a grievance relating to the suspension and termination of Mr. Batista-Valla which resulted in an arbitration hearing before Arbitrator Sarah Garraty ("the

Arbitrator").  The parties, by joint submission, stipulated to the following issues for the arbitrator to decide:

> Did the Employer violate Article VII of the collective bargaining agreement by suspending or terminating the grievant, Orlando Batista-Villa without just cause? If not, what shall be the remedy?

During the course of the hearing, Class argued that it had just cause to terminate the grievant for the alleged abuse given its own internal investigation and the substantiation of mistreatment by the DDS.  The Union responded that 1) the employer violated the CBA by suspending Mr. Batista-Villa for the duration of the DDS investigation; 2) the employer lacked just cause for the suspension or termination because its internal investigation was inadequate and simply "rubber stamped" the DDS; and 3) Class did not prove that the grievant slapped Bobby.

After a review of the evidence and witness testimony, including the DDS decision letter, the Arbitrator found that Class violated Article VII of the CBA by suspending and terminating Mr. Batista-Valla.  The Arbitrator based her finding on her conclusions that 1) Class used the DDS investigation as "stand in" for its obligation to conduct an internal investigation pursuant to the CBA; 2) both the internal investigation by Class and the investigation by DDS had serious substantive defects; and 3) Class did not show, by clear and

convincing evidence, that the grievant had mistreated Bobby.
Furthermore, the Arbitrator found that Class had failed to
report relevant information to the DDS investigators and that
DDS does not operate under a contractual "just cause" standard,
making it inappropriate for the employer to treat a DDS finding
as determinative under the CBA.

## II.   Motion for Judgment on the Pleadings

### A. Legal Standard

Although a Rule 12(c) motion for judgment on the pleadings
considers the factual allegations in both the complaint and the
answer, it is governed by the same standard as a Rule 12(b)(6)
motion to dismiss. See Perez-Acevedo v. Rivero-Cubano, 520 F.3d
26, 29 (1st Cir. 2008).  To survive such a motion, the subject
pleading must contain sufficient factual matter to state a claim
for relief that is actionable as a matter of law and "plausible
on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)
(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).
For a claim to be facially plausible, the pleadings must show
"more than a sheer possibility that a defendant has acted
unlawfully." Id.  A plaintiff cannot merely restate the
defendant's potential liability. Id.

In considering the merits of such a motion, the Court must
accept all factual allegations in the complaint as true and draw
all reasonable inferences in the plaintiff's favor. R.G. Fin.

-6-

Corp. v. Vergara-Nunez, 446 F.3d 178, 182 (1st Cir. 2006).  The
Court may also consider documents if 1) the parties do not
dispute their authenticity, 2) they are "central to the
plaintiffs' claim" or 3) they are "sufficiently referred to in
the complaint." Curran v. Cousins, 509 F.3d 36, 44 (1st Cir.
2007) (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir.
1993)).

### B. Overview of the Parties Arguments

The employer contends that reinstating the grievant would
violate a clear Massachusetts public policy of protecting
disabled individuals and therefore the Court should depart from
the general rule of deference to an arbitrator's decision.
Class further submits that the award should be vacated because
the Arbitrator exceeded her authority and did not draw the award
from the essence or text of the CBA.  Specifically, Class
asserts that 1) the Arbitrator impermissibly applied a clear and
convincing standard of review; 2) the CBA incorporates company
policy which expressly provided for suspension of employees
without pay after a DDS report of mistreatment; and 3) the award
granting the grievant backpay contravenes the CBA.

The Union rejoins that the Arbitrator's award should be
confirmed because it comports with a plausible interpretation of
the CBA and courts must accord utmost deference to the results
of a bargained-for arbitration.  The Union submits that the

public policy exception does not apply in this case because the arbitrator duly considered the DDS findings but found its investigation to be severely flawed.

### C. District Court Review of Arbitration Awards

#### 1. Legal Standard

District court review of an arbitration award is exceedingly deferential and "among the narrowest known in the law". Salem Hosp. v. Mass. Nurses Ass'n, 449 F.3d 234, 237 (1st Cir. 2006) (quoting Me. Cent. R.R. Co. v. Bhd. of Maint. of Way Emps., 873 F.2d 425, 428 (1st Cir. 1989)). So long as there is a plausible basis for the arbitrator's interpretation of the agreement, the reviewing court must uphold the arbitrator's decision even if the court would interpret the agreement differently. UMass Mem'l Med. Ctr., Inc. v. United Food & Commercial Workers Union, 527 F.3d 1, 5 (1st Cir. 2008); see also United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 38 (1987) ("[A]s long as the arbitrator is even arguably construing or applying the contract and is acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision."). Nevertheless, "an arbitrator's decision is not entirely impervious to judicial oversight". Salem Hosp., 449 F.3d at 238. It is essential that

-8-

the power and authority of an arbitrator is totally derived
from the collective bargaining agreement and [the
arbitrator] violates his obligation to the parties if he
substitutes his own brand of industrial justice for what
has been agreed to by the parties in that contract.

Ga.-Pac. Corp. v. Local 27, United Paperworkers Int'l Union, 864
F.2d 940, 944 (1st Cir. 1988) (internal quotation marks omitted)
(quoting United Steelworkers v. Enter. Wheel & Car, 363 U.S.
593, 597 (1960)); see also Misco, 484 U.S. at 38 (holding that
the arbitrator's award "must draw its essence from the
contract").

### 2. Application

#### a. The Public Policy Exception

Courts recognize a narrow "public policy" exception to the
rule of utmost deference to an arbitrator when an award violates
"an explicit...well defined and dominant public policy" Mercy
Hosp., Inc. v. Massachusetts Nurses Ass'n, 429 F.3d 338, 343
(1st Cir. 2005) (quoting W.R. Grace & Co. v. Local Union 759,
Int'l Union of United Rubber Workers, 461 U.S. 757, 766, (1983)
(international citations and quotations omitted).  Massachusetts
has a public policy interest in protecting individuals with
disabilities from abuse.  Class contends that reinstating Mr.
Batista-Valla after the DDS has substantiated a report of
mistreatment would contravene that policy.

The facts of the DDS investigation do not support a finding
that the exception applies.  In her decision reinstating the

grievant, the Arbitrator considered the DDS report and determined that the Agency's investigatory process was deficient because it did not interview key witnesses and based its finding on incomplete information.  The Arbitrator concluded that the DDS investigatory process was "tainted" by the employer's failure to provide the DDS with complete information and the names of all relevant witnesses.  Moreover, the Arbitrator did not find that Mr. Batista-Villa mistreated Bobby.  This Court is bound by those findings of fact. See El Dorado Tech. Servs., Inc. v. Union Gen. De Trabajadores, 961 F.2d 317, 320 (1st Cir.1992) (noting "as a general proposition, an arbitrator's factual findings are not open to judicial challenge").  Therefore, this Court will not accept the proposition that the results of an incomplete and flawed investigation by a state agency warrant the application of the public policy exception.

The fact that the DDS did not recommend sanctions suggests that, in this case, public policy considerations are not strong enough to vacate the Arbitrator's decision.  Massachusetts regulations give the DDS discretionary authority to impose sanctions on individuals who have been found responsible for mistreatment but the DDS declined to recommend a sanction in this case.  Furthermore, 115 CMR § 9.17(4) allows employees to grieve a DDS decision when they have access to a collectively bargained arbitration process.  Mr. Batista-Valla utilized that

process, and, after review, the Arbitrator came to a different conclusion than that reached by the DDS.  That the applicable Massachusetts regulation provides for this procedure suggests that a DDS finding does not necessarily prescribe the public policy exception if the arbitrator disagrees with the Agency.

 Given the Arbitrator's finding that the DDS investigation was flawed, the fact that DDS itself did not recommend a sanction and the limited scope of the public policy exception, this Court declines to vacate the award under that exception.

### b. The Standard of Review

The employer maintains that the Arbitrator exceeded the scope of her authority by applying a clear and convincing standard of review (as opposed to a preponderance of the evidence standard) when nothing in the text of the CBA suggests that a heightened standard should control.  The Arbitrator applied the heightened standard because of the seriousness of the allegations and the associated stigma.  Regardless of whether a heightened standard was warranted, when an arbitration agreement is silent as to the standard of review, an arbitrator can decide the rules of procedure "so long as he stays within the bounds of fundamental fairness."  Keebler Co. v. Truck Drivers, Local 170, 247 F.3d 8, 11 (1st Cir. 2001).

Moreover, though she applied a heightened standard of proof, the Arbitrator found that even under the preponderance of

the evidence standard she was "unconvinced that the evidence demonstrates just cause" for termination.  Given the utmost deference afforded the Arbitrator and her ability to set procedural rules, this Court finds that the use of a clear and convincing standard was not fundamentally unfair or outside the Arbitrator's discretion.

### c. Adherence to the Essence of the CBA

Class maintains that the Arbitrator's award must be vacated because company policy expressly provides for termination of employees against whom DDS renders a finding of abuse.  The employer asserts that the management rights provision in Article IV of the CBA grants it the right to establish disciplinary procedures unless specifically limited by an express provision of the CBA.  The Union responds that the parties expressly bargained for articles governing discipline and discharge that do not contain any language regarding a DDS finding of abuse and thus the Arbitrator was correct in limiting her analysis to the text of the CBA.

The Arbitrator interpreted the CBA as not requiring discharge after an adverse DDS investigation.  A district court is to uphold an award which is based on an arbitrator's interpretation of a collective bargaining agreement if it can find "any plausible basis for that interpretation." El Dorado Tech. Servs., Inc. F.2d 317 at 319 (1st Cir. 1992).  On its

face, Article VII states that an employee may be discharged only for just cause.  It does not provide for specific action resulting from an agency finding of abuse or mistreatment.  When drafting the CBA, the parties negotiated mutually agreeable termination provisions.  They did not include a clause with respect to termination after an adverse DDS finding. See Kraft Foods, Inc. v. Office & Prof'l Employees Int'l Union, AFL-CIO, CLC, Local 1295, 203 F.3d 98, 102 (1st Cir. 2000) (noting that when "an agreement neither requires nor bars particular remedies, the arbitrator's discretion is at its zenith.") (internal quotations omitted). The Arbitrator did not find that the employer's promulgated policy should take precedence over the bargained-for agreement between the parties.  Due to the deference owed the Arbitrator, this Court will not disturb her award on those grounds.

### d.    The Grievant's Suspension Without Pay

As an alternative to vacating the award, the employer maintains that the remedy should be modified to exclude any backpay because it contravenes Article XXXIII of the CBA.

In her decision, the Arbitrator held that Class, pursuant to Article XXXIII, could not suspend Mr. Batista-Villa for four months without pay without conducting its own thorough internal investigation irrespective of the DDS.  Because she found that Class had not conducted such an investigation and had made no

-13-

just cause determination during the four months, she determined the suspension without pay was unwarranted and ordered backpay.

In accordance with applicable caselaw, a district court will uphold an arbitrator's award based on an interpretation of a collective bargaining agreement if there is "any plausible basis for that interpretation." Union Gen. De Trabajadores de Puerto Rico, 961 F.2d 317 at 319.  On the one hand, the plain language of the Article XXXIII suggests that Class was within its rights to suspend Batista-Villa following the complaint.  On the other, the Arbitrator's finding that the CBA required Class to make a determination under the just cause provision of the CBA is not "demonstrably wrong". Id.  The Arbitrator considered that issue and found that Article XXXIII requires the employer to conduct an internal investigation regardless of the outcome of any DDS investigation.  Because Class did not do so, the Arbitrator reasonably found that the employer improperly suspended the grievant without pay for over four months.  As the First Circuit has explained, "judges have no roving writ to second-guess arbitral decisions" and therefore this Court will decline to modify the Arbitrator's award. Id.

**ORDER**

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Docket No. 14) is **DENIED** and defendant's motion for judgment on the pleadings (Docket No. 16) is **ALLOWED**. The arbitrator's award is **CONFIRMED**.


**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated October 24, 2019